IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| USAA CASUALTY INSURANCE COMPANY, )<br>Subrogee of Burt H. and Mary Kathleen Lowe, )<br>    Plaintiff, )<br> )<br>    v. )<br> )<br>PM TERMINALS, INC., *et al.*, )<br>    Defendants. )<br>_____ ) | CIVIL NO. 3:12cv868 (REP) |

## SECOND REPORT AND RECOMENDATION

This matter is before this Court for the second time upon referral from the District Court for a Report and Recommendation on Defendant's Motion to Dismiss. (ECF No. 6.) Senior United States District Judge Robert E. Payne initially referred this matter on February 6, 2013. (ECF No. 14.) This Court issued a Report and Recommendation on May 20, 2013, finding that no cognizable common law duty of care owed to Plaintiff existed; therefore, this Court recommended that Defendants' Motion to Dismiss be granted. (Report and Recommendation "Report" (ECF No. 21).)

Plaintiff filed its objections to the initial Report on June 3, 2013, arguing that this Court incorrectly applied Virginia law and did not construe the facts in the light most favorable to Plaintiff. (ECF No. 22.) Because the parties failed to adequately address the issues in their original briefs, Judge Payne determined "that the appropriate resolution of this matter [was] to return the matter for further consideration by the Magistrate Judge." (ECF No. 23.) After full briefing, Plaintiff's objections to this Court's initial Report are ripe for decision. For the reasons

that follow, this Court recommends that Plaintiff's objections be OVERRULED, that Defendants' Motion to Dismiss be GRANTED and that Plaintiff's claims be DISMISSED.

<u>Plaintiff's Objections</u>

Plaintiff raises four objections to the initial Report. First, Plaintiff asserts that this Court did not construe the facts in the light most favorable to Plaintiff. (Plaintiff's Objections to the Report and Recommendation of the United States Magistrate Judge "Pl.'s Obj." (ECF No. 22) at 2.) Second, Plaintiff asserts that this Court wrongly relied on *Baker v. Poolservice Company*, 272 Va. 667, 636 S.E.2d 360 (2006), as controlling authority as to whether Fuels Oils owed a duty to the Lowes at the time of Mr. Lowe's call to Fuel Oils on November 30, 2011. (Pl.'s Obj. at 3.) Third, although irrelevant to resolution of the issues in the motion, Plaintiff asserts that this Court erred by stating that "Plaintiff fails to cite a single case that supports such a duty (referring to a common law duty owed by a repairman to respond as argued by Plaintiff)." (Pl.'s Obj. at 14.) Finally, Plaintiff complains that this Court erred by stating: "One need not possess a specialized knowledge of furnaces to understand the obvious dangers of a pool of oil near a furnace." According to Plaintiff, "it cannot be said as a matter of law that the *hazard* created by that pool of oil near a furnace is open and obvious." (Pl.'s Obj. at 16) (emphasis in original). For the following reasons, Plaintiff's objections lack merit.

<u>Objection One: The Court Applied the Correct Standard of Review</u>

As noted in the initial Report, the Court construes the allegations in the Complaint in favor of the non-moving party, as required when resolving a motion for judgment on the pleadings. Fed. R. Civ. P. 12(c); *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 591 (4th Cir. 2004) (citations omitted). When ruling on a motion to dismiss, the Court may only consider facts alleged in the Complaint and cannot consider assertions set forth in the

pleadings. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). In its objections, Plaintiff agrees with this standard. (Pl.'s Obj. at 3.) Thus, Plaintiff's actual complaint focuses on whether the Court abided by the standard.

In this regard, Plaintiff first objects to the Court's determination that Plaintiff violated the above standard in its response to the motion to dismiss by "asserting that Fuel Oils' previous service of the Lowe's furnace 'might have caused the leak.'" (Pl.'s Obj. at 4-5) (quoting Report at 4.) Plaintiff concedes in its objections that nowhere in the Complaint does Plaintiff allege that Fuel Oils' service "might have caused the leak" (Pl.'s Obj. at 5), but attempts to walk back this assertion in its original response to the motion to dismiss by saying that this assertion was "merely background to the germane allegations that Mr. Lowe was a customer and that Fuels Oils had recently serviced his furnace." (Pl.'s Obj. at 5.) This explanation is, at best, disingenuous. Plaintiff made this assertion not once, but twice in its original response. (Plaintiff's Response in Opposition to Defendants' Motion to Dismiss "Pl.'s Resp." (ECF No. 9) at 8 ("Fuels Oils had recently serviced his furnace, and its work might have caused the leak"), 14 ("it was that service that any reasonable customer would think may have caused the leak").) And that asserted fact would have dramatic impact upon the analysis of Fuel Oils' duty had it actually been asserted in the Complaint. Thus, this Court properly pointed out the error of Plaintiff's assertion that Fuel Oils' actions during the original service call may have caused the leak at issue.

Plaintiff also challenges the following assertion in the Report and Recommendation:

> One need not possess a specialized knowledge of furnaces to understand the obvious dangers of a pool of oil near a furnace. Indeed, that was the reason that Mr. Lowe called Fuel Oils when he observed the pool of oil.

3

(Report at 11.) Plaintiff complains that "while the existence of this oil was obvious, its *significance* was not, unless the Court imputes knowledge to Mr. Lowe that is not included in the Complaint and therefore construes the Complaint in the light most favorable to defendants." (Pl.'s Obj. at 17.) Yet, the Complaint states that "Mr. Lowe discovered a large pool of No. 2 fuel oil that had leaked from this furnace [and] then telephoned Fuel Oils to report this leak." (Complaint "Compl." (ECF No. 1) at 3 ¶ 6.) Thus, the assertion in the Report is completely consistent with that alleged in the Complaint and draws no negative inferences against Plaintiff.

Notably, Plaintiff also errs in its Objections and Supplemental Response by repeatedly referring to an existing "customer relationship" between the Lowes and Fuel Oils. (Pl.'s Obj. at 13, 15; Plaintiff's Response in Opposition to Defendant's Supplemental Memorandum in Support of Its Motion to Dismiss "Pl.'s Resp. Suppl." (ECF No. 27) at 2-3, 10.) According to Plaintiff, "[t]he original service call and work performed by Fuels Oils on the furnace created a customer relationship between the defendants and the Lowes." (Pl.'s Resp. Suppl. at 2-3.) But that is not what Plaintiff alleges in its Complaint. The Complaint makes only one reference to the nature of the relationship of the parties:

> 6. On or about November 15, 2011, Fuel Oils provided service and maintenance work on a furnace located at the residence of Mr. and Mrs. Burt H. Lowe, located at 7644 Yarmouth Drive, Richmond, Virginia 23224. Approximately two weeks after Fuel Oils performed its work on this furnace, Mr. Lowe discovered a large pool of No. 2 fuel oil that had leaked from this furnace. Mr. Lowe then telephoned Fuel Oils to report this leak.

(Compl. at 3.) In short, the Complaint alleges that Fuel Oils previously serviced the Lowe's furnace on a *single* occasion — far from the on-going relationship that Plaintiff repeatedly suggests in its pleadings. And the Complaint makes no allegation that Fuels Oils provided any type of warranty on their work or that the parties contracted for on-going service, which perhaps explains Plaintiff's decision to bring an action based in tort instead of contract. In short, the

4

Complaint only alleges that Fuels Oils serviced the Lowes' furnace once and then agreed to service it again when called by Mr. Lowe on November 30, 2011. (Compl. at 3.)

<u>Objection Two: The Court Properly Relied on *Baker*</u>

As this Court previously noted, resolution of Defendants' motion must focus on a single issue: whether Plaintiff has alleged in the Complaint a cognizable duty of care owed by the Lowes at the time of Mr. Lowe's call to Fuel Oils on November 30, 2011. *Zellers v. NexTech Northeast, LLC*, __ Fed. Appx. __, 2013 WL 3722346, at *6 (4th Cir. July 17, 2013) ("In Virginia, 'a plaintiff who seeks to establish actionable negligence must plead the existence of a legal duty, violation of that duty, and proximate causation which results in the injury.'") (quoting *Kellermann v. McDonough*, 278 Va. 478, 487, 684 S.E.2d 786, 790 (2009)). In its initial opinion, this Court turned to two cases from the Supreme Court of Virginia for guidance. The first, *Hegwood v. Virginia Natural Gas*, 256 Va. 362, 505 S.E.2d 372 (1998), held that a gas company had fulfilled its duty to its customers when it turned off the gas supply to malfunctioning appliances during a routine maintenance check and warned the customers of the defects. The second, *Baker v. Poolservice Company*, 272 Va. 677, 636 S.E.2d 360 (2006), held that a repairman had no duty to use the company's superior knowledge about pool repairs to warn homeowners about the risk of entrapment associated with cleaning the pump system. *Baker* distinguished *Hegwood* on the grounds that *Hegwood* involved a utility company and that the duty was assumed as part of a standard inspection. *Id.* at 685-686, 636 S.E.2d at 365.

The Court found *Baker* to be controlling based on the nature of the relationship between the parties, because Defendants "were not manufacturers of the furnace, nor were they the suppliers of the leaking oil . . . [and] their contract did not require that Defendants conduct a regular safety inspection." (Report at 10.) Plaintiff claims that neither of the cases cited in the

Report is "'controlling'" and argues that these cases in fact support the existence of a duty in the current case. (Pl.'s Obj. at 3.) This Court continues to believe that *Baker* controls this case and that Plaintiff has failed to allege a cognizable duty of care owed by Fuel Oils to the Lowes.

Plaintiff argues that *Baker* is not controlling, and that the "customer relationship between the parties" created by the non-eventful maintenance appointment two weeks before the November 30, 2011 phone call warrants imposition of a duty. (Pl.'s Obj. at 10-13.) Plaintiff reiterates the importance of this "customer relationship" in its most recent brief. (Pl.'s Resp. Suppl. at 2-3, 10.) Plaintiff emphasizes that Fuel Oils had serviced the appliance at issue two weeks before (Pl.'s Obj. at 5, 9, 11, 13), unlike the defendant in *Baker* who "was not 'hired to perform any work associated with the drain cover.'" (Pl.'s Obj. at 11) (citing *Baker* at 686, 636 S.E.2d at 365). Here, Plaintiff points out, Fuel Oils had actual knowledge of the hazard and acknowledged the problem by agreeing to send a repairman the next day. (Pl.'s Obj. at 11-12.) Based on these distinctions, Plaintiff contends that this Court's "finding that *Baker* is 'controlling' is incorrect and clearly contrary to law." (Pl.'s Obj. at 12.)

However, even viewing the facts in the light most favorable to Plaintiff, this "customer relationship" is insufficient to justify imposing a duty to warn upon Fuel Oils. Nowhere in the Complaint does Plaintiff allege that the prior maintenance was negligent or in any way related to the fire, or that Fuel Oils did anything other than "restore the [furnace] to its original and intended operating condition." *Baker* at 684, 636 S.E.2d at 364. Furthermore, Plaintiff alleges no on-going contractual agreement that would create a duty, nor does it allege that Defendants manufactured or sold the furnace or supplied the fuel oil. Plaintiff also does not allege a fiduciary relationship or any type of special relationship that would justify such a significant extension of duty; it merely repeats, without support of any authority, that the "customer

relationship" between Fuel Oils and the Lowes was sufficient to create a duty to warn. (Pl.'s Resp. Suppl. at 2, 3, 7, 10.)

As in *Baker*, based upon the allegations as pled, Fuel Oils "did precisely what the homeowners hired it to do: return the [furnace] to its normal, working condition." *Baker* at 685, 636 S.E.2d at 365. Importantly, the court in *Baker* distinguished *Hegwood* on the grounds that in *Hegwood*, "the warning given by the serviceman was part of a duty the utility assumed in the performance of the general safety check," which was "performed as part of the utility's resumption of services supplying natural gas, an inherently dangerous substance, to the resident." *Id.* at 686, 636 S.E.2d at 365. The defendant in *Baker*, like Fuel Oils, was merely hired as a repairer, and the Complaint here provides no indication that Fuel Oils "assumed [any] duties outside the parameters of those for which it had been contracted." *Id.* at 686, 636 S.E.2d at 365. Furthermore, as the defendant asserted in *Baker*, "the duty [Plaintiff] seeks to impose on repairmen to warn individuals of product defects would 'transform the repairer into the insurer of products manufactured by others[,] a position which has no support under Virginia law.'" *Id.* at 684, 636 S.E.2d at 364. The Court continues to find that the reasoning in *Baker* applies here and, therefore, Plaintiff has failed to allege a common law duty.

Plaintiff also gives a detailed synopsis of the facts in *Hegwood*, arguing that the holding "confirmed that the mechanic owed a common law duty of care to the occupants of the house," and that *Hegwood* is distinguishable from the present case solely because "the mechanic in *Hegwood* took numerous steps to fulfill his duty." (Pl.'s Obj. at 7-8.) Citing the court in *Hegwood*, Plaintiff argues that "'when a company has actual knowledge of a dangerous defect in a customer's equipment or appliance, it has a duty to exercise reasonable care to shut off the service to such equipment or appliance.'" (Pl.'s Obj. at 8) (citing *Hegwood* at 369, 505 S.E.2d at

377). Therefore, Plaintiff concludes that "[i]f *Hegwood* is correctly applied to the facts of the present case in the light most favorable to Plaintiff, the Magistrate Judge's analysis is flawed and contrary to law." (Pl.'s Obj. at 8.)

As Defendants point out, however, Plaintiff fails to provide the full quote in *Hegwood*, which states:

> Generally, a *utility*, such as a natural gas company is not responsible for a dangerous defect in a customer's equipment or appliance beyond the company's delivery point. However, when a company has actual knowledge of a dangerous defect in a customer's equipment or appliance, it has a duty to exercise reasonable care to shut off the service to such equipment or appliance.

*Hegwood*, 256 Va. at 369, 505 S.E.2d at 377 (emphasis added). Although the parties quibble over whether this quotation applies only to utility companies, we need not answer that here. The point instead is that a significant difference exists between a utility company and a repairer. The former supplies the equipment and the product as part of an on-going relationship. And, importantly, the product generally cannot be observed (*e.g.*, natural gas or electricity), such that dangers remain hidden from customers. On the other hand, a customer contacts a repairer *because* he observes a problem, which occurred here. Consequently, the specialized knowledge possessed by a utility results in the duty that *Hegwood* speaks of — a duty that does not exist for a repairer.

Thus, the facts of *Hegwood* are easily distinguishable from the case at bar. The gas company in *Hegwood* assumed a duty to warn by performing a general safety check as part of the restoration of natural gas to the house. Furthermore, the defendants in that case provided a utility; therefore, the occupants of the house had an on-going contractual relationship with the defendants to supply natural gas and the service technician performing the safety check was not merely a repairer hired specifically for maintenance purposes. The defendant company in

8

*Hegwood* was thus held responsible, because it had an on-going relationship with the plaintiffs to provide a utility and because it specifically undertook to perform a general safety check as part of the resumption of that service. Here, neither of those principles applies.

Plaintiff does not allege that Fuel Oils provided either the furnace or the leaking oil, or that it had an on-going contract with the Lowes. Furthermore, not only did Fuel Oils not undertake to perform any sort of safety check, its repairers had not yet even observed the problem firsthand. Therefore, the Court concludes, for the reasons stated above as well as in the previous Report, that the imposition of a duty to warn in *Hegwood* does not justify the extension of liability in this case.

The Court also finds instructive a similar case from the Eastern District of New York. In *Levine v. Sears Roebuck and Co., Inc.*, 200 F. Supp. 2d 180 (E.D.N.Y. 2002), the plaintiff had purchased a dishwasher from Sears and entered into a contract with Sears for maintenance of the dishwasher. The plaintiff tripped and fell in her kitchen, because her foot became caught under the loose door of the dishwasher, which the plaintiff alleged that a Sears repairman had serviced three months earlier. *Id.* at 183. The court noted that a repairer could be liable for injuries caused by a device if the repairer inadequately repaired the device or undertook to make repairs on that device and negligently failed to find the actual defect. *Id.* at 187. However, the court concluded that even if the repairman had performed work on the dishwasher door as the plaintiff alleged, the plaintiff's claim must be rejected as a matter of law because "plaintiff [did] not allege, nor [did] the record reveal, that the service technician misrepresented to her that the door was fixed completely, or that she relied on his assurances to that effect." *Id.* at 188. As in *Levine*, Plaintiff does not allege that the Lowes relied on any assurances by Defendants concerning the condition of the furnace. Furthermore, even though Sears had an ongoing

9

maintenance contract to service the dishwasher and had previously performed work on the dishwasher door, the "customer relationship" was insufficient to impose a duty on the repairer. Consequently, the Court finds that this reasoning supports its finding that Fuel Oils had no duty to warn the Lowes in the instant case.

Plaintiff further contends that *Tuel v. Hertz Equipment Corp.*, 2011 WL 4368838 (E.D. Va. 2011), *aff'd* 508 Fed. Appx. 212, 2013 WL 323287 (4th Cir. Jan. 29, 2013), which delineates factors to consider when establishing the existence of tort duty, supports a duty in this case, because of the "clear customer relationship between the parties and a reasonable expectation that the defendants would use their superior knowledge to respond appropriately" to the leak. (Pl.'s Obj. at 12-13.) The court in *Tuel* set forth several factors to consider in determining whether a tort duty exists, namely "foreseeability, the relationship between the parties, the defendant's opportunity and ability to exercise care, reasonable expectations of the parties and of society generally, the proliferation of the claims, the likelihood of unlimited insurer-like liability, and the public policies affecting the expansion or limitation of new channels of liability." *Tuel*, 2011 WL 4368838, at *3 n. 4. Plaintiff claims that these factors, in particular foreseeability and the relationship between the parties, support its contention that Defendants owed a legal duty to the Lowes. (Pl.'s Obj. at 12-13.)

Specifically, Plaintiff argues that "it is certainly foreseeable that Mr. Lowe would contact Fuel Oils if he experienced a fuel oil leak after the recent servicing of his furnace," (Pl.'s Obj. at 13), and that Defendants' "superior knowledge" about the hazard produced by the fuel leak rendered the accident foreseeable to them, thereby creating a duty. (Pl.'s Obj. at 11) (citing Compl. at 3, ¶ 7). Plaintiff also states that "it was also reasonably foreseeable to Fuel Oils that the Lowes could be injured if Fuel Oils did not properly exercise due care," citing, somewhat

perplexingly, *Khadim v. Lab. Corp. of Am.*, 838 F. Supp. 2d 448, 458 (W.D. Va. 2011), as authority supporting the existence of a duty. (Pl.'s Obj. at 13.)

The court in *Tuel* noted that an event is "reasonably foreseeable" when "there is a reason for an entity to be aware that an uncertain future event might or could occur." *Tuel*, 2011 WL 4368838, at *4 n. 11. The Virginia Supreme Court has held that a duty to warn can arise from the superior knowledge of a manufacturer or distributor concerning its product and the consequently greater foreseeability of harm associated with that knowledge. *Featherall v. Firestone Tire & Rubber Co.*, 219 Va. 949, 962, 252 S.E.2d 358, 366 (1979). However, there appears to be no Virginia authority imposing such a duty on a repairer. Significantly, the court in *Baker* reasoned that, although a duty to warn arises when a manufacturer has superior knowledge regarding its products, that principle was not applicable to the repairman defendant, because the repairer did not manufacture the pool or any of its parts. *Baker* at 685, 636 S.E.2d at 365.

As to Plaintiff's first point, the foreseeability of Mr. Lowe's phone call is irrelevant. The material issue is the foreseeability of the fire following the phone call, not the phone call itself. The Court acknowledges that it is foreseeable to the ordinarily prudent person that a pool of fuel oil near a gas furnace might or could ignite. As the Court noted in its Report, "[o]ne need not possess a specialized knowledge of furnaces to understand the obvious dangers of a pool of oil near a furnace" and, indeed, Mr. Lowe clearly recognized that this leak created a hazard, because he contacted Fuel Oils upon observing the problem. (Report at 11.) However, Plaintiff has not alleged that Defendants are the manufacturers or distributors of the furnace or the suppliers of the oil, in which case Virginia law might impose a duty based on their superior knowledge and foresight. Furthermore, it is well established that foreseeability alone does not create a duty; it is

just one factor of several to be considered. *Dreisonstock v. Volkswagenwerk, A.G.*, 489 F.2d 1066, 1070 (4th Cir. 1974).

The Court also does not find Plaintiff's reliance on *Khadim* instructive. The court in *Khadim* examined the relationship between expecting parents and the laboratory that incorrectly performed genetic testing for the plaintiffs and their then-unborn child, and reiterated the principle that, once one assumes a duty to undertake a specific task, one must perform that duty with due care. *Khadim*, 838 F. Supp. 2d at 458. In that case, the defendants undertook to perform genetic testing for a specific defect and requested further genetic information from the parents to confirm their report. *Id.* at 460. Neither the facts nor the rationale of *Khadim* are at issue in the instant case.

Moreover, the factors involving public policy and the reasonable expectations of the parties and the public weigh heavily against Plaintiff. The Court has not found a single case — and Plaintiff has yet to cite one despite its many filings — that imposes a common law duty of care upon a repairer in these circumstances. And this Court continues to believe that the public does not envision a repairman incurring an everlasting duty of care to a customer based solely on a single, previous service call. As the defendants in *Baker* asserted and the Virginia Supreme Court agreed, to do so would "transform the repairer into the insurer of products manufactured by others[,] a position which has no support under Virginia law." *Baker* at 684, 636 S.E.2d at 364. Therefore, for the reasons stated above, the Court concludes that Plaintiff has failed to allege a cognizable common law duty owed to the Lowes by Defendants.

Objection Three:  Plaintiff's Failure to Cite a Case in Support of the Alleged Duty Owed

Plaintiff also objects to this Court's statement in the initial Report that Plaintiff "fails to cite a single case that supports" a duty owed by defendants in this case. (Pl.'s Obj. at 14.) Plaintiff points out that it cited *Volpe v. City of Lexington*, 281 Va. 630, 708 S.E.2d 824 (2011), in its Response and argues that the rationale in that case, where a duty was found, is applicable to the case at bar. (Pl.'s Obj. at 14-16.)

The Supreme Court of Virginia concluded in *Volpe* that the City of Lexington as landowner had a duty to warn its invitees of dangers that were not "ordinarily encountered" risks. *Volpe* at 637, 708 S.E.2d at 827. In that case, a young boy visiting a Maury River riverside park drowned below a low-head dam because of a strong hydraulic that was allegedly not apparent to swimmers. *Id.* at 634, 708 S.E.2d at 824. Plaintiff claims that this holding is applicable to the case at hand, because the court in *Volpe* did not expressly limit its holding to premises liability cases and because, like the defendants in that case, Fuel Oils had superior knowledge about the risk created by the fuel leak and that this knowledge "combined with [Defendants'] company-customer relationship with the Lowes" created a duty. (Pl.'s Obj. at 15.)

However, the Court does not find this analogy persuasive. The holding and rationale in *Volpe* are clearly intended to address circumstances involving a landowner-invitee relationship. The duty in that case arises from the principle — well-established in Virginia — that a landowner owes "the duty of using ordinary care to maintain its premises in a reasonably safe condition and to warn . . . of any hidden danger," and, notably, the court began its analysis by establishing the child's invitee status. *Volpe*, 281 Va. at 636, 708 S.E.2d at 827 (citing *Amos v. NationsBank, N.A.*, 256 Va. 344, 346, 504 S.E.2d 365, 366 (1998)). Further, as the Virginia Supreme Court has previously noted, where a defendant does not have ownership of or control

over property, such defendant has no duty to warn of any dangerous conditions existing on the property. *Hiett v. Lake Barcroft Community Ass'n*, 244 Va. 191, 196, 418 S.E.2d 894, 897 (1992). Thus, *Volpe* fails to provide any support for Plaintiff's assertion that a repairman owes a common law duty of care under the circumstances present in this case and Plaintiff has yet to cite to any case that supports the finding of such a duty.

Objection Four: The Court Appropriately Referenced the Obvious Danger Posed by the Leak

Finally, Plaintiff complains that this Court erred by stating: "One need not possess a specialized knowledge of furnaces to understand the obvious dangers of a pool of oil near a furnace." According to Plaintiff, "it cannot be said as a matter of law that the *hazard* created by that pool of oil near a furnace is open and obvious." (Pl.'s Obj. at 16.) (emphasis in original). In addressing this objection, the Court begins by making clear that it did not apply the "open and obvious" doctrine applicable to landowner-invitee cases as described in *Volpe* in the initial Report. Instead, the Court referenced the "open and obvious" doctrine as it relates to the alleged specialized knowledge possessed by Fuel Oils. *See* Report at 11 ("Because of the open and obvious nature of the risk, Defendants' superior knowledge did not bring about a duty to warn."). In other words, this Court did not address whether the "open and obvious" doctrine applies to repairmen, but merely turned to the "open and obvious" doctrine when evaluating the significance of the alleged specialized knowledge possessed by Fuel Oils.

Plaintiff argues that "while the existence of a pool of fuel oil may be open and obvious, it cannot be said as a matter of law that the *hazard* created by that pool of oil near a furnace is open and obvious." (Pl.'s Obj. at 16.) But Plaintiff misses the point — the issue here is whether Defendants owed the Lowes a duty of care to address the hazard and that issue is purely a question of law. "In every case, it is for the court to determine, as a question of law, from all the

circumstances, if it is controverted, whether the plaintiff falls within the class of those to whom the defendant owes a duty." *Dudley v. Offender Aid & Restor. of Richmond, Inc.*, 241 Va. 270, 401 S.E.2d 878, 883 (1991); *see also Dur v. Western Branch Diesel, Inc.*, 240 Fed. Appx. 568, 571, 2007 WL 2005028, at *2 (4th Cir. 2007) ("The determination of whether Subcontractor owed Plaintiff a legal duty in the context of the electrical work Subcontractor performed on the DeGrasse in its role as a subcontractor is a pure question of law.") (citing *Burns v. Johnson*, 250 Va. 41, 45, 458 S.E.2d 448, 451 (1995)). Although it is also true that "whether a condition or defect is open and obvious may be, under certain circumstances, a jury issue," *Scott v. City of Lynchburg*, 241 Va. 64, 65, 399 S.E.2d 809, 810 (1991), if reasonable minds could not differ as to whether the nature of a hazard was or should have been open and obvious, then the issue may be decided as a matter of law. *Austin v. Clark Equipment Co.*, 821 F. Supp. 1130, 1334 (W.D. Va. 1993), *aff'd*, 48 F.3d 833 (4th Cir. 1995).

It is well established that a manufacturer or retailer is not liable for a failure to warn when the nature of the hazard is open and obvious. *See Austin*, 821 F. Supp. at 1333; *Brockett v. Harrell Bros. Inc.*, 206 Va. 457, 143 S.E.2d 897 (1965). The Fourth Circuit has recently reaffirmed this principle in *dicta* while examining the duty owed by a shipowner to stevedores and longshoremen working on the ship, stating that "'the duty to warn attaches only to latent hazards.'" *Bunn v. Oldendorff Carriers GMBH & Co. KG*, __ F.3d __, 2013 WL 3722366, at *4 (4th Cir. July 17, 2013) (citing *Lincoln v. Reksten Mgmt.*, 354 F.3d 262, 266 (4th Cir. 2003)).

Neither party has provided, nor has the Court been able to locate, any Virginia precedent that closely follows the facts of this case; however, other districts have held that the risk of fire posed by flammable materials near appliances such as a stove or heater is an open and obvious hazard as a matter of law. *See Gonzalez v. Reed-Joseph Int'l Co.*, 2013 WL 1578475, at *7 (S.D.

Tex. Apr. 11, 2013) (obvious risk of operating a flammable object near other flammable objects obviates manufacturer's duty to warn as a matter of law); *Michnovez v. Blair, LLC*, 2012 WL 2627567, at *7 (D.N.H. 2012) (risk that close proximity to gas stove could cause plaintiff's bathrobe to ignite is open and obvious as a matter of law); *Public Service Mut. Ins. v. Empire Comfort Systems, Inc.*, 573 F. Supp. 2d 372, 379 (D. Mass. 2008) (the risk of fire posed by placing a mattress on top of a gas heater is open and obvious to anyone of ordinary intelligence as a matter of law); *Biles v. Tyson Foods, Inc.*, 1996 WL 684134, at *3 (N.D. Ga. 1996) (risk of fire created by hot oil near a stove is open and obvious as a matter of law). The vast majority of these cases concern the duty of manufacturers, distributors and landowners. However, the court in *Levine* added that a repairer also may have a duty to warn of any dangers "of which he knows or should know," except that "where a danger is readily apparent as a matter of common sense, there should be no liability for failing to warn someone of a risk or hazard which he [or she] appreciated to the same extent as a warning would have provided." *Levine*, 200 F. Supp.2d at 189 (citations omitted).

As the Court noted in its initial Report, "one need not possess a specialized knowledge of furnaces to understand the obvious dangers of a pool of oil near a furnace." (Report at 11.) Surely, the risk of ignition posed by fuel oil near a gas flame is just as apparent to the common homeowner as the risk posed by a mattress near a heater or by cooking oil near an open-flame stove. Furthermore, Mr. Lowe clearly knew as a matter of common sense that the leaking oil was hazardous, because he called Fuel Oils seeking service upon observing it. Therefore, the open and open nature of the hazard undermines the import of any specialized knowledge that Fuels Oils may have possessed and further undercuts the notion that Defendants owed a duty to warn the Lowes of the fire hazard when Mr. Lowe called Fuels Oils to report the leak.

In short, the obvious danger presented by the pool of oil diminishes the weight to be afforded to any specialized knowledge possessed by Fuels Oils. When this factor is weighed along with the other factors set forth in *Tuel*, it becomes clear that Plaintiff has failed to allege a cognizable common law duty owed to the Lowes by Defendants.

## Conclusion

Accordingly, the Court recommends that Plaintiff's Objections to the Report and Recommendation (ECF No. 22) be OVERRULED, Defendants' Motion to Dismiss (ECF No. 6) be GRANTED and Plaintiff's claims be DISMISSED.

Let the Clerk file this Report and Recommendation electronically and forward a copy to the Honorable Robert E. Payne with notification to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ 
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: August 5, 2013